In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 16-3391

LAWANDA KING,

*Plaintiff-Appellant*,

*v.*

FORD MOTOR COMPANY,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 7967 — **John Z. Lee**, *Judge*.

———————————

ARGUED MARCH 27, 2017 — DECIDED OCTOBER 2, 2017

———————————

Before BAUER and EASTERBROOK, *Circuit Judges*, and
DEGUILIO, *District Judge*.[*]

DEGUILIO, *District Judge*. LaWanda King worked for many
years as an assembler in Ford Motor Company's vehicle as-
sembly plants. After transferring to its Chicago plant in 2010,
though, she claims that she was sexually harassed by a super-

———————————

[*] Of the Northern District of Indiana, sitting by designation.

visor, after which she began getting reassigned to less desirable tasks, missing out on overtime, and receiving unwarranted discipline. Ultimately, she was fired in 2013 after missing several weeks of work for medical reasons that Ford claims she didn't properly document. In this suit, King asserts claims for sexual harassment and FMLA interference, and also asserts that Ford retaliated against her for her complaints of sexual harassment and her taking of FMLA leave. Due to a series of procedural missteps and substantive shortcomings, all of her claims fell at summary judgment. King appeals, and we affirm.

## I. Background

LaWanda King began working for Ford Motor Company in its vehicle assembly plants in 1992, initially at an Ohio plant. King was a union employee and worked in the Chassis Department as a headlight aimer. The events underlying this suit began after King transferred to Ford's Chicago plant in 2010. King states that, in December 2011, her supervisor made inappropriate, sexually charged comments over a period of several days. King complained to a labor relations representative and also made calls to Ford's national harassment hotline to report the harassment. King asserts that after she began complaining of harassment, she began getting reassigned to different, less-desirable tasks, and was denied overtime opportunities. On March 20, 2012, King filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging among other claims that she had been sexually harassed and retaliated against. The EEOC issued a right-to-sue letter on that charge on August 31, 2012. However, King had moved without advising the EEOC of her change of address, so she did not receive the letter.

King claims that her employment remained turbulent over the ensuing months. She was disciplined on a number of occasions and claims that she was not paid for certain hours that she worked, though she offers few specific examples of any of these incidents. She was also disciplined in January 2013 for having eight absences over the previous eighteen months, for which Ford's attendance policy called for a two-week suspension. King returned from that suspension in February, but was then diagnosed with a medical condition that required her to take time off work. On March 7, 2013, she called Ford's third-party benefits administrator and requested a medical leave. That call triggered a conditional medical leave, but King was required to submit documentation justifying her need for leave. King's doctor submitted a form describing King's need for leave, but Ford's medical department deemed the form insufficient, as it lacked certain details.

Because King's conditional leave expired and her doctor's note was found insufficient, King's continued absence from work triggered Ford's 5-Day Quit Process. Under that process, which is set forth in the collective bargaining agreement, a notice is issued to the employee advising that the employee has five working days to either return to work or justify their continued absence. The notice is automatically initiated by Ford's medical records system. Employees who fail to comply with the notice will be fired and lose their seniority.

A 5-Day Quit notice was issued to King on March 21, 2013, and was mailed the following day. The notice advised King that her continued absence had not been approved, and that she had five working days to report for work or give a satisfactory reason for her continued absence. On April 1—five

working days after the notice was mailed—King called several employees in Ford's labor relations department, including Aaron Wynn, a labor relations representative. She did not reach any of those individuals, so she left voicemails, but does not indicate what she said. There is no evidence that Wynn received any of those messages before the following day. King also spoke to two other employees. One unidentified employee stated that King's doctor needed to submit documentation or King would be fired, and a clerk in the medical department stated that King's paperwork was acceptable through March 28 (which had already passed), but that her doctor needed to submit paperwork to extend her leave beyond then.

On April 2, having not received any documentation justifying King's continued absence, Wynn processed King's termination, stating that her leave had expired and that she failed to respond to the 5-Day Quit notice. At that time, Ford's records showed that King had worked 970 hours in the preceding 12 months, which would not be enough to be covered under the Family and Medical Leave Act ("FMLA"). Around this same time, King filed two more charges of discrimination with the EEOC. On March 27, King filed a charge alleging that Ford retaliated against her for her previous charge and her other complaints of harassment by reassigning her, denying her overtime, failing to pay her for hours that she worked, and unfairly disciplining her. Ford did not receive notice of that charge until after it terminated King's employment. King filed another charge the following month, alleging that her termination was in retaliation for her first charge.

The EEOC issued right-to-sue letters on those charges in August 2013, after which King filed her complaint in this case

on November 6, 2013. Her complaint asserted claims for sexual harassment and retaliation under Title VII, 42 U.S.C. §§ 2000e-2, -3; for interference with her rights under the FMLA and retaliation for her taking of FMLA leave, 29 U.S.C. § 2615; and for a violation of the Illinois Whistleblower's Act. After the close of discovery, Ford moved for summary judgment on all counts. In her response, King relied heavily on a declaration from Grant Morton, a union chairman at the plant. Ford argued that the declaration should be stricken because King never disclosed Morton as a witness. In ruling on the motion, the district court agreed and struck Morton's declaration. On the substance of the claims, the court held that King's sexual harassment claim was time-barred, that her FMLA interference claim failed because she had not worked enough hours to be eligible for FMLA leave at the time of her firing, and that she had not provided evidence sufficient to support an inference of retaliation. Accordingly, the court granted summary judgment as to the federal claims and relinquished supplemental jurisdiction over the state-law claim. King filed a motion for reconsideration, but the district court denied that motion, so King appealed.

## II. Discussion

We review a district court's grant of summary judgment de novo. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). We construe all facts and draw all reasonable inferences in a light most favorable to the non-moving party. *Id.* Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A. Morton Declaration

Before proceeding to the substance of the claims, King objects to the district court's decision to strike Morton's declaration. Morton stated in his declaration, for example, that Ford representatives had expressed to him their displeasure that women were filing sexual harassment complaints with the EEOC and told him that his "people better stop complaining." Morton also stated that when he discussed with a human resources representative why King had been marked "absent without leave" on a number of occasions, she responded that "it would be helpful if Ms. King dropped her EEOC charge" and that the AWOLs would be cleared if King did so. Ford argued that the district court should not consider this declaration because King failed to disclose Morton as a witness in her Rule 26(a) disclosures, which prevented Ford from being able to depose him or investigate his statements during discovery. The district court agreed, so it struck the declaration.

Rule 26(a) requires a party to disclose the name of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses…." Fed. R. Civ. P. 26(a)(1)(A)(i). If a party fails to do so, it "is not allowed to use that … witness to supply evidence on a motion …, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (stating that the sanction of exclusion "is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless"). The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court. *David*, 324 F.3d at 857. "We review all discovery

sanctions for abuse of discretion and will uphold a district court's decision so long as it could be considered reasonable." *Dynegy Marketing & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011).

King spends many pages on appeal arguing why the district court's decision was unreasonable, but in the district court, her argument on this point spanned only three sentences: she argued that Morton's name had come up in discovery, so Ford knew about him and could have deposed him. She did not cite to the record for those alleged disclosures, though, so the district court was entitled to disregard that assertion, and we will not consider on appeal materials that were not properly cited to the district court.[1] *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017); *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017); *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015). And as the district court noted, there is obvious prejudice in failing to disclose such a witness during discovery, as that prevented Ford from deposing Morton and conducting any appropriate follow-up discovery, so the violation was not harmless. King also argues that the district court should have taken other steps to cure the prejudice without striking the declaration. However, she did not propose any alternatives to the district court, and while the court may have been within its discretion to pursue other options, it did not abuse its discretion in choosing to strike the declaration. *Hassebrock v. Bernhoft*, 815 F.3d 334, 341 (7th Cir. 2016); *Novak v.*

---

[1] The district court also noted that its own review of the record did not reveal anything that would have adequately disclosed Morton as a witness on the topics covered in his declaration. We find no error in that conclusion either.

*Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 973–74 (7th Cir. 2015); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759 (7th Cir. 2004).

In a motion for reconsideration, King noted that Morton had filed an EEOC charge of his own, which she believes should have alerted Ford to some of Morton's assertions of misconduct. That charge was not filed until after the close of discovery in this case, though, and it still did not show that Morton would be a witness for King, so that charge would not have alleviated any of the prejudice. The motion for reconsideration also attached a letter King's counsel wrote on the day discovery closed that referenced the Rule 26(a) disclosures. However, that letter could have been submitted along with King's response to the motion for summary judgment, so it was not properly presented for the first time in a motion for reconsideration. *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). Thus, the district court did not abuse its discretion in denying the motion for reconsideration on this issue. Accordingly, we analyze the motion for summary judgment without considering Morton's declaration.

### B.  Sexual Harassment

King first asserts a Title VII claim based on sexual harassment by her supervisor in December 2011. King filed a charge of discrimination with the EEOC based on that harassment in March 2012, and the EEOC issued a right-to-sue letter on August 31, 2012. King did not file suit until November 6, 2013, though, well over 90 days later, so the district court granted summary judgment on this claim based on the statute of limitations. *See* 42 U.S.C. § 2000e-5(f)(1) (requiring plaintiffs to file suit within 90 days of being notified of their right to sue).

In the district court, King argued that she never received the right-to-sue letter, so the 90-day limitations period never began to run. The district court rejected that argument, as King admitted that she failed to keep the EEOC apprised of her current mailing address, so her non-receipt of the right-to-sue letter was her own fault. *See Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005) (holding that when receipt of the right-to-sue letter "is delayed by fault of the plaintiff, the constructive receipt doctrine applies and the 90-day clock starts running once delivery is attempted at the last address provided").

King does not contest that holding on appeal, but argues only that her claim is nonetheless timely because she reincorporated the allegations from her first, time-barred charge into her second and third charges, as to which her suit is timely. However, "[i]f the claimant fails to file suit within the ninety-day window, the lapsed claims are not revived by including them in a second EEOC charge and restarting the process." *Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1186 (10th Cir. 2006); *accord Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 391 (1st Cir. 2014) ("[I]f the proponent of a discrimination claim fails to sue within the specified ninety-day period, his claim expires and is not resuscitated by the filing of a second administrative charge."); *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). This argument is also factually incorrect, as the later charges refer to the first charge as protected activity in support of retaliation claims,

but do not allege any sexual harassment. Accordingly, the district court correctly granted summary judgment as to this claim.[2]

### C. FMLA Interference

King next asserts a claim for FMLA interference. Though she suggests in passing that she was improperly denied FMLA leave on previous occasions, the only argument King develops on appeal is that Ford interfered with her right to FMLA leave by firing her in April 2013 for her medical absence that began the previous month. The district court granted summary judgment on that claim because King failed to provide sufficient evidence that she had worked enough hours to be eligible for the FMLA's protections at that time.

The FMLA entitles certain eligible employees to up to 12 weeks of leave in a year. To be eligible for FMLA leave, an employee must have worked at least 1,250 hours in the preceding 12-month period. 29 U.S.C. § 2611(2)(A); *Pirant v. U.S. Postal Serv.*, 542 F.3d 202, 206 (7th Cir. 2008) ("The right of family leave is conferred *only* on employees who have worked at least 1,250 hours in the previous 12 months."). Plaintiffs bear the burden of proving their eligibility for the FMLA's protections, *Simpson v. Office of Chief Judge of Circuit Court of Will Cty.*, 559 F.3d 706, 712 (7th Cir. 2009), meaning King must provide evidence that she had worked at least 1,250 hours in the 12 months prior to her leave.

---

[2] Any protected activity during this period could still support a retaliation claim if it triggered later acts of retaliation that are not time-barred, but as discussed below, King has not shown a causal connection between her activities during this period and the later adverse actions as to which her suit is timely.

In moving for summary judgment, Ford submitted its time records showing that King had worked only 1,157 hours in the 12 months before she began her absence in March 2013, and only 970 hours in the 12 months before her firing on April 2, 2013. In response, King submitted an affidavit in which she stated that, on unspecified occasions, she had been marked absent without leave on days she was actually at work or absent with leave. She then stated: "Disregarding improper AWOLS, I worked a sufficient number of hours to qualify for FMLA. Prior to requesting FMLA leave in March 2013, I met the minimum number of hours worked to be eligible for FMLA leave, if [Ford] removed improper disciplines and AWOLS from my employment record."

That conclusory assertion falls far short of creating a triable issue of fact on this question. "Summary judgment is not a time to be coy: 'conclusory statements not grounded in specific facts' are not enough" to stave off summary judgment. *Sommerfield*, 863 F.3d at 649 (quoting *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016)). King's affidavit did not identify any particular error in Ford's time records or even attempt to estimate how many hours she had actually worked over the year in question; she offered only the bare legal conclusion that she should be deemed to have worked enough hours to be eligible for FMLA leave.

The district court did not, as King contends, make a credibility finding in holding that this statement did not create a triable issue of fact. Rather, it correctly observed that King's affidavit did not contain any facts—as opposed to conclusions—that would show she actually worked at least 1,250 hours in the preceding year. *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004); *Drake v. Minn. Mining & Mfg. Co.*,

134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). King also argues that her burden is lightened because Ford's records are unreliable, but the bare assertion in her affidavit would not meet any burden, no matter how light.[3] *See Melton v. Tippecanoe Cty.*, 838 F.3d 814, 819 (7th Cir. 2016) ("At the very least, an employee relying on his own recollection to prove a violation of FLSA must have a reasonably reliable story; FLSA plaintiffs are still bound to the requirements of Rule 56.").

Finally, King tried to remedy this shortcoming through a motion for reconsideration, with which she submitted an unsworn chart purporting to identify her hours over the year in question. That was too late, though, as a motion for reconsideration is not an opportunity to present materials that could have been presented the first time around. *Obriecht*, 517 F.3d at 494. Thus, the district court did not abuse its discretion in declining to consider those materials, and it correctly granted summary judgment on this claim.

## D. FMLA and Title VII Retaliation

Finally, King asserts claims for retaliation, claiming that Ford retaliated against her for her taking of FMLA leave and her complaints of sexual harassment. To make out a claim of retaliation under either the FMLA or Title VII, a plaintiff must

---

[3] King also relies on appeal on a wage complaint she filed in which she claimed to have unpaid hours, but she did not cite to that document in the district court, and that document does not show that any uncredited hours took place in the pertinent period.

show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015); *Collins v. Am. Red Cross*, 715 F.3d 994, 998 (7th Cir. 2013). There is no dispute that the first two elements are met in at least some respect, so these claims boil down to whether there is a causal connection between the two.

There is, however, a question as to the scope of the protected activity and adverse actions that King has properly presented. King's filings speak in sweeping terms as to both elements, stating, for example, that King had the anti-harassment hotline "on speed dial," and that after her protected activity, she "went unpaid, was wrongly disciplined, punished for petty offenses, and wrongly deemed AWOL numerous times." Assertions at such a high level of generality do not suffice at this stage, though—a party "must present *specific facts* showing a genuine issue to survive summary judgment." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 722–23 (7th Cir. 2008); *see also Bordelon*, 811 F.3d at 991 (holding that a plaintiff's conclusory assertions were insufficient to avoid summary judgment where he "only offered sweeping generalizations about the way the protected class was treated"); *Lucas*, 367 F.3d at 726. King offers few specific examples of any of those incidents, and often makes no attempt to connect them to her claim. For example, while King argues that she was consistently denied overtime and reassigned to less desirable positions, she never identifies who was responsible for those actions or whether that person would have been aware of her protected activity.

Distilled to the facts that were properly identified and sup-
ported, the only protected activity as to King's FMLA claim is
a leave she took in March 2012.[4] As to her Title VII claim,
King's protected activity consists of her March 2012 EEOC
charge and her internal complaints of harassment, the last of
which was a call to the anti-harassment hotline in April 2012.
Meanwhile, the adverse action on which King focuses most
heavily is her firing in April 2013. Beyond that, the only action
she identifies with sufficient specificity for these purposes is
her January 2013 suspension for excessive absences. Accord-
ingly, the question is whether the evidence could support a
causal connection between those instances of protected activ-
ity and those adverse actions. In deciding that question, we
consider the evidence as a whole and ask whether a reasona-
ble jury could draw an inference of retaliation. *Ortiz v. Werner
Enters., Inc.*, 834 F.3d 760, 764–66 (7th Cir. 2016).

First, King identifies four other employees who she be-
lieves were treated better than she was. However, she does
not say how, nor does she attempt to show that they are sim-
ilarly situated to her or even that they are outside her pro-
tected class. Thus, any different treatment of those employees
offers no support for a finding that Ford's treatment of King
was retaliatory. *See Arizanovska v. Wal-Mart Stores, Inc.*, 682
F.3d 698, 703 (7th Cir. 2012) ("The 'similarly-situated' inquiry
is a 'flexible, common-sense one,' but it at least requires that

---

[4] To the extent there were others, they would have been earlier than
this one, and thus would have been even farther removed from the ad-
verse actions. Also, King does not challenge the district court's holding
that the leave immediately preceding her firing in April 2013 would not
constitute protected activity if, as we have held, she was not eligible for
FMLA leave at that time.

the plaintiff name a comparator outside her protected class."
(quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007))).

King also argues that the timing of the adverse actions was
suspicious. There was a gap of almost a year between the last
protected activity in April 2012 and King's firing, though, and
of about nine months between the last protected activity and
her discipline in January 2013. Gaps that large tend to under-
mine rather than support any inference of causation. *Carter*,
778 F.3d at 658 ("[W]e do not find a span of seven months to
be suspicious.") (also collecting cases where five-, six-, and
nine-month gaps were found too great to be suspicious).
King's argument in this regard relies on characterizing previ-
ous events such as her reassignments and denials of overtime
as part of a pattern of retaliation that culminated in her firing.
As just discussed, however, King has not adequately devel-
oped that argument by identifying specific instances or show-
ing that whoever was responsible for them was aware of her
protected activity or was involved in the later actions. Thus,
those generalizations offer no support for a claim of retalia-
tion.

King's primary argument on causation is that Ford's rea-
son for firing her was pretextual, as she argues that she ade-
quately responded to the 5-Day Quit notice and should not
have been fired for that reason.[5] At the outset, though, our
concern is not whether Ford's decision to fire King was cor-
rect, but whether it was retaliatory. Even assuming that the 5-
Day Quit notice *was not* the real reason for King's firing, King
would still need to offer some reason to infer that retaliation
*was* the reason. However, she offers no suspicious timing, no

---

[5] King does not develop any argument that the January 2013 discipline
was pretextual.

comparator evidence, and (without the Morton declaration) no comments by decisionmakers in reference to any of King's or anyone else's protected activities that could suggest a retaliatory animus. Thus, even if King could show that the 5-Day Quit process was a pretext, there is no evidence from which a jury could find that it was a pretext *for retaliation* for King's taking of FMLA leave or complaints of sexual harassment a year earlier. That missing link is fatal to King's claims. *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (stating that even "if [the plaintiff's] evidence showed pretext, that alone would not be sufficient to survive summary judgment" without some evidence pointing to a prohibited animus as the cause for the decision); *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298–99 (7th Cir. 2010) (holding that, even assuming the plaintiff provided evidence of pretext, his claim would still fail without "some minimal showing that the 'real reason'" for the decision was discrimination).

Regardless, we agree with the district court that the evidence does not support a finding of pretext, either, which concerns whether the stated reason was not merely erroneous or unfair, but a lie. *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012). After King had been absent from work for nearly three weeks, at which point her conditional leave had expired and the medical department had found her doctor's note lacking, Ford issued a 5-Day Quit notice that required King to either report for work or give the Human Resources Department a satisfactory reason for her continued absence. King did not report back to work, and though she called and spoke to or left voicemails for various employees, she does not identify what she said or whether she provided a "satisfactory reason" for her continued absence, as required. She did not show that

any of those messages reached Wynn before he processed her termination, either.

King further argues that she was fired a day early, as she should have had until the end of the day on April 2, 2013 to respond to the notice. However, the notice expressly stated that King had to respond within five working days of the date on the notice—March 21, 2013—and there is no genuine dispute that April 1, 2013 was at least five working days later.[6] King also stated that a clerk in the medical department told her that her paperwork was acceptable (though only through March 28), but there is no evidence that the medical department ever conveyed such a belief to Wynn, who knew that a 5-Day Quit notice had been issued and had no indication that King complied with it. Thus, even assuming that Ford got its wires crossed and erred in firing King, that does not show that the reason was pretextual. For those reasons, the district court correctly granted summary judgment on King's retaliation claims.

### III.  Conclusion

The district court did not abuse its discretion in striking the Morton declaration or in rejecting the materials and arguments raised for the first time on a motion for reconsideration. On the evidence properly before it, the district court correctly held that King's sexual harassment claim was untimely and

---

[6] Ford began counting from March 22, when the notice was mailed, and because March 29 was a holiday, five working days after March 22 was April 1, giving King through the end of that day to comply with the notice.

that she failed to provide evidence sufficient to survive summary judgment on her remaining claims. Accordingly, the judgment of the district court is AFFIRMED.