**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 4, 2018*
Decided April 4, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 17-2815

| | |
|---|---|
| CYNTHIA E. PEARSON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 14 C 9474 |
| ADVOCATE HEALTH CARE, *Defendant-Appellee*. | Gary Feinerman, *Judge*. |

## O R D E R

Cynthia Pearson sued Advocate Health Care, her former employer, claiming that she was subjected to a hostile work environment based on her race and that she was later terminated in retaliation for complaining of racial discrimination, all in violation of

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. The district court entered summary judgment in favor of Advocate, and we affirm.

On appeal from the entry of summary judgment, we present the facts in the light most favorable to Pearson. *See Milligan-Grimstad v. Morgan Stanley*, 877 F.3d 705, 708 (7th Cir. 2017). From 1999 until her termination in October 2012, Pearson worked as a secretary in Advocate Lutheran General Hospital's emergency office, in which she was the only black employee. Throughout her time at Advocate, Pearson clashed with many of her coworkers, including her one-time officemate Jane Hynes. Hynes was often rude and petty with Pearson: she yelled at Pearson, unexpectedly took time off (leaving Pearson to cover for her), placed passive-aggressive notes on Pearson's desk, and deleted or misfiled documents needed for Pearson's work. Pearson occasionally fought back, and her supervisor, Terrie Sobeski, issued two corrective action notices in 2008 and early 2009 for her "Rude and Discourteous Behavior" toward Hynes. The record does not reveal if Hynes received comparable discipline, but Pearson suspects not.

Hynes and Pearson's feud peaked in October 2009, when Hynes blocked Pearson from walking to her desk by pressing up against her, waved papers in her face, and repeatedly yelled that she was "ignorant." Pearson wrote a letter to her supervisors and human resource manager Leonard Pawelski complaining of Hynes's harassment; the letter did not mention race, though Pearson says she told the recipients that she believed Hynes's actions were racially motivated. (Pearson also asserts she had told the same people in 2007 that another coworker harassed her because of her race.) Advocate investigated, but Hynes disputed Pearson's story and no one else witnessed their argument, so nothing came of it. Pearson then filed a charge of racial discrimination with the EEOC, which dismissed the charge in 2011. After the charge was dismissed Pearson did not elect to sue. Advocate assigned Hynes to a different department, but she remained nearby, and the two continued to quarrel.

Pearson also clashed with her supervisor, Sobeski, over her performance reviews. Pearson's reviews dating as far back as 2004 highlighted her rocky relationships with coworkers. In an early 2011 review, Sobeski noted in line with this history that Pearson was unprofessional and "not conversant" and gave her the lowest rating that still entitled Pearson to a raise: "meets expectations." Sobeski also told Pearson that the EEOC charge had hurt their "sister relationship." Pearson objected to the review because, although she had received the same rating and similar admonitions about her behavior the previous four years, she found Sobeski's comments this time

unfairly critical. Pawelski stepped in to mediate. Pawelski said that Pearson, who had battled with many coworkers (including cafeteria staff, when she found a fly on her glazed donut), was the "only common denominator" in her workplace conflicts. Pearson believed this comment showed that her supervisors were biased against her.

The fights over Pearson's performance reviews only got worse from there. In a July 2011 follow-up review, Sobeski concluded that Pearson was now exceeding expectations, in part because she was cooperating more with coworkers. But Pearson again appealed to Pawelski, leading Sobeski to express frustration with Pearson's challenging even positive feedback. Pearson's next review, in July 2012, fell back down to a "meets expectations" rating. Again meeting with Pawelski, Pearson objected to nearly all of Sobeski's comments. After the meeting, Pawelski and Sobeski decided to terminate Pearson for "misalignment"—i.e., because she could not get along with coworkers or her supervisor. On October 12, 2012, Advocate fired Pearson on that basis.

In her complaint Pearson asserted several claims under 42 U.S.C. § 1981 and Title VII, but at summary judgment she narrowed her case to claims of a racially hostile work environment and retaliation for complaining of racial discrimination. The district court granted Advocate's motion for summary judgment. On appeal, Pearson maintains that she marshaled sufficient evidence of her claims to present them to a jury. Because the standards for her claims are the same under 42 U.S.C. § 1981 and Title VII, we analyze them together. *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Pearson first argues that Advocate was aware that she was subject to a hostile work environment and failed to rectify it. Proving a claim of a racially hostile work environment requires a plaintiff to show, among other things, that the harassment she suffered was based on her race. *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1614 (2017). Pearson cannot establish this crucial element because there is not enough evidence in the record from which a reasonable jury could conclude that the harassment she describes was racially motivated.

Most of the harassment of which Pearson complains—yelling, deleting documents, requiring her to cover unreported absences—is connected to race only by the fact that she was the sole black employee in her department. But that alone is not enough to raise a genuine fact dispute for a hostile-work-environment claim. *See id.* at 897. The racial character of the harassment "need not be explicit," but "there

must be *some* connection" to race. *Id.* at 896 (internal quotation marks omitted) (quoting *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014)).

The two specific remarks that Pearson highlights do not supply the connection Pearson must show between the harassing conduct and her race. Pawelski's comment that Pearson was the "common denominator" of workplace conflict is unilluminating. Pearson provides no evidence from which a jury could infer that she was so labeled because of her race, and not her perpetual conflict with coworkers. And, though Pearson insists that Hynes's repeatedly calling her "ignorant" evinces race-based harassment, the meaning that she ascribes to Hynes is speculative. Pearson maintains that "ignorant" is code for a racial epithet. But the only support she supplies for that proposition, beyond her own opinion, is her passing reference in her deposition to a popular dictionary of slang (she has not put the purported definition in evidence). Even if we assume Pearson is correct, however, this is not enough evidence from which a jury could infer that Hynes shared her understanding. *See Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647–48 (7th Cir. 2011).

Also unavailing is Pearson's claim that her performance reviews, corrective action notices, and termination were retaliation for her informal complaints of racial discrimination and her 2009 EEOC charge. Pearson clears the requirements that she engaged in protected activity and that she suffered adverse employment actions (at a minimum, her termination). *See King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017). Where she falls short is demonstrating that "a causal connection exists between the two." *Id.*

Sobeski's comment, in 2011, that the 2009 EEOC charge had hurt her and Pearson's "sister relationship" is not enough to show a causal connection. Though it was unacceptable for Sobeski to criticize Pearson for filing an EEOC charge, the comment was too attenuated from her termination to permit an inference that Sobeski fired her with retaliatory intent. Sobeski made the comment nearly two years before Pearson's termination in 2012. Thus Pearson can only barely narrow the three-year gap between her protected activity and her termination that undermines her claim that Advocate fired her because of her EEOC complaint, *see King*, 872 F.3d at 842.

And it would do Pearson no good if we, like the district court, assume that Pearson's 2008 and 2009 corrective action notices also were adverse actions (though they likely are not, *see Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108–09

(7th Cir. 2012)). The timing of these disciplinary notices is even less compelling as evidence of retaliatory motive. They were issued in February 2008 and March 2009—before Pearson would fight with Hynes, complain about Hynes's calling her ignorant, and file her EEOC charge. Before the notices, the last complaint about racial discrimination that Pearson can point to occurred in early 2007. This gap is again too wide to lead to an inference of a retaliatory motive. *See King*, 872 F.3d at 842. Timing is not conclusive evidence in retaliation cases, but Pearson gives us little else to go on as circumstantial evidence of motive.

In any event, Advocate presented a credible non-retaliatory reason for Pearson's termination, and Pearson cannot show that this reason was a pretext and thus that an intent to retaliate was the but-for cause of her termination. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017) (noting that "the true question" of a causal link between a protected activity and an adverse action is "whether the proffered reasons were a pretext for retaliation"). Advocate brought forth evidence that it disciplined and ultimately fired Pearson because of "misalignment," i.e., her poor working relationship with coworkers and Sobeski. Pearson's performance reviews dating back to 2004, including reviews written by her supervisor before Sobeski, bear this out. *Every* review, even those that were overwhelmingly positive, mentions her conflicts with coworkers; this consistency defeats her claim that retaliation was Advocate's true motive. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008). Pearson counters that her coworkers provoked her. But that goes to show only that Advocate's reason might have been flawed, not that it was a pretext for a retaliatory motive. *See Zayas*, 740 F.3d at 1158–59.

We have considered Pearson's other arguments, but none merits discussion.

AFFIRMED