In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1579

BRANDI LUTES, Personal Representative of the Estate of
BUDDY F. PHILLIPS,

*Plaintiff-Appellant*,

*v.*

UNITED TRAILERS, INC., and UNITED TRAILERS EXPORTING INC.,
*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 2:17-CV-00304 RLM — **Robert L. Miller, Jr.**, *Judge*.

ARGUED NOVEMBER 13, 2019 — DECIDED JANUARY 27, 2020
OPINION ISSUED FEBRUARY 13, 2020*

Before BAUER, BRENNAN, and SCUDDER, *Circuit Judges*.

PER CURIAM. Buddy Phillips (now deceased) injured his
ribs while playing with his grandchildren. Over the next two

---

* The court initially resolved this appeal by nonprecedential order.
The order is being reissued as an opinion.

weeks he called his employer, United Trailers, to report he would miss work. Eventually Phillips stopped calling in and did not appear for work on three consecutive days so United fired him. He sued, alleging United failed to properly notify him of his rights under the Family Medical Leave Act ("FMLA") and that he was fired in retaliation for attempting to exercise his right to seek leave under that Act. The district court granted summary judgment for United. This appeal presents a complicated fact pattern under the FMLA in which the employee (through unreported absences) and the employer (by failing to inform the employee of requisite information about FMLA leave) may have failed to comply with the FMLA. We affirm the district court's judgment as to Phillips's retaliation claim but vacate the court's judgment concerning Phillips's interference claim and remand for further proceedings consistent with this order.

## I. Background

Phillips was employed by United Trailers, Inc., from 2002 until he was fired in 2015. United manufactures enclosed cargo trailers and employs over 130 people. Phillips worked as a metal department trimmer installing fenders, trim, and lights to the back of trailers. Like a typical United production worker, he worked eight to ten hours a day, depending on production needs.

On July 3, 2015,[1] Phillips injured his ribs while playing with his grandchildren. The next day he went to the hospital and was diagnosed with fractured ribs. X-rays also revealed heart issues that required additional testing. The medical notes from Phillips's visit reflect that he was told to conduct

---

[1] All events referenced in this Order took place in 2015.

"activity as tolerated." He still felt pain, however, and returned to the emergency room six days later.

Phillips's first scheduled workday after the holiday was July 6. He was unable to work because of his ribs, so he called in to report his absence. United's attendance policy requires employees to report absences by calling United's main telephone number and leaving a message no later than fifteen minutes before the start of a scheduled shift. Employees who do not comply with this procedure accrue "points," and an employee who accrues thirteen points will be fired. Under this system, an employee who fails to call in for three consecutive days will accrue fifteen points. Phillips's widow, Rhonda, testified Phillips knew United's attendance policy.

On the days he was scheduled to work over the next two weeks, Phillips (or Rhonda on his behalf) telephoned in his absences in accordance with United's attendance policy. He called off work on July 6, 7, 8, 14, and 16. These calls were reported and logged by Linda Nichols, a payroll assistant at United, in a "call-in log." Nichols testified she keeps a record of all reported absences in the call-in log, and she regularly reviews the log with the director of human resources so he can identify and address attendance policy violations. Nichols's entry in the call-in log for July 6 lists "rib," without elaboration, as Phillips's reason for his absence that day. No other entry lists a reason for Phillips's absence. Rhonda attested that at some point in early July, she had told Nichols that Phillips had fractured his ribs and he would not be at work for a while. But Nichols testified that other than the July 6 "rib" note in the call-in log (that she reproduced from Phillips's voicemail), neither Phillips nor Rhonda provided any further explanation for his absences.

Randy Snyder, the plant manager, also listens to employee voicemails describing absences, and he passes that information on to "group leaders" so they know if an employee will miss their scheduled shift. Rhonda testified she and Phillips both had called Snyder and told him Phillips had fractured his ribs and he needed time off to recover and have testing done on his heart. Snyder recalled one brief conversation with Rhonda about Phillips's "chest area." Rhonda also testified she spoke with Nichols about seven times, trying to get in touch with Snyder to discuss Phillips's absences, but she was unable to reach him.

Also of note, United's director of human resources testified that neither Nichols nor Snyder had any certification in human resources or the FMLA.

Phillips followed up with his primary care physician on July 15, who recommended he not return to work until early August. Phillips did not provide documentation of that visit or his physician's recommendation to United.

After two weeks of not being able to work, Phillips stopped reporting his absences to United. Specifically, he did not call in to report his absences on July 20, 21, 22, or 23. As a result, he accrued more than 13 points, and United promptly fired him. Up to this point, Phillips had not provided to United medical records about his fractured ribs. United had not asked for any such information, nor had it informed Phillips of his ability to take leave under the FMLA. Rhonda testified had Phillips known he was able to take leave under the FMLA, he would have done so.

Phillips sued asserting United violated the FMLA, 29 U.S.C. § 2617, by interfering with his "entitlement to leave"

when it failed to inform him of his eligibility and rights under the Act. He also claimed United fired him in retaliation for exercising his FMLA rights. To prevail on a claim that an employer interfered with the employee's rights under the FMLA, the employee must demonstrate (1) he was eligible for the FMLA, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled. 29 U.S.C. § 2615; *Guzman v. Brown Cty.*, 884 F.3d 633, 638 (7th Cir. 2018). To establish retaliation, an employee must demonstrate he was engaged in a protected activity, the employer took an adverse employment action against him, and there was a connection between his protected activity and the adverse employment action. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015).

Regarding Phillips's interference claim, the district court acknowledged triable questions existed over whether Phillips's rib injury was a serious medical condition. The court noted the record was thin on this point: Phillips was diagnosed with a broken rib and told to perform activity as tolerated; his primary care physician told him to not return to work until August; and his wife and daughter testified Phillips's ability to walk and lift his arms were impaired. While the proof was sparse, the court ruled a reasonable jury could conclude Phillips's rib injury was a qualifying serious medical condition. Next, the district court determined that questions of fact existed as to whether Phillips provided adequate notice of his injury to United. The court noted that the evidence showed Phillips had called United and communicated his rib injury. While the parties disputed the precise contents of the conversation, because Phillips had done more than merely

ask for time off—he provided a reason for his absence—it was a material question of fact for the jury to decide whether Phillips had provided adequate notice.

Notwithstanding these rulings, the district court ultimately entered summary judgment for United. The court concluded that because it was undisputed Phillips had eventually stopped calling United to report his absences, that failure precluded his FMLA-interference claim. In support of this conclusion, the district court cited to *Righi v. SMC Corp. of Am.*, 632 F.3d 404 (7th Cir. 2011). In *Righi,* this court noted the FMLA regulations "explicitly provide that employers may require their employees to comply with their 'usual and customary notice and procedural requirements' when requesting FMLA leave." *Id.* (quoting 29 C.F.R. § 825.302(d) (2006)). Citing prior cases that discussed § 825.302(d), we concluded "an employee's failure to comply with his employer's internal leave policies and procedures is a sufficient ground for termination and forecloses an FMLA claim." *Id*. at 411. Relying on *Righi*, the district court concluded Phillips's failure to follow United's attendance policy precluded his interference claim.

Turning to Phillips's retaliation claim, the district court ruled Phillips had failed to present any evidence of discriminatory or retaliatory intent or even that he had engaged in protected activity. The only permissible inference from the record, the court concluded, was that United fired Phillips because he failed to comply with its attendance policy.

## II. Discussion

We review the district court's grant of summary judgment de novo. *King v. Ford Motor Co.*, 872 F.3d 833, 837 (7th Cir. 2017). We construe the facts and draw all reasonable

inferences in a light most favorable to Phillips as the non-moving party. *Id.* Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

## A. Interference with FMLA Rights

Phillips primarily challenges the district court's conclusion that United did not interfere with his rights under the FMLA. He does not dispute he failed to comply with United's policies regarding absences, which ordinarily would foreclose his FMLA claim. *See Righi*, 632 F.3d at 411; 29 C.F.R. § 825.303(c). Instead, he contends United violated the FMLA and interfered with his rights because it did not provide him the requisite leave information *before* he stopped reporting his absences. *See* 29 C.F.R. §§ 825.301(a), 825.303(b).

### 1. *The FMLA and Enacting Regulations*

The FMLA entitles an eligible employee to take up to twelve work weeks of leave when the employee has a serious health condition that renders him unable to perform his position. 29 U.S.C. § 2612(a). It is unlawful for an employer to interfere with an employee's attempt to exercise his FMLA rights. *Id.* § 2615(a).

The employee and the employer have shifting responsibilities under the FMLA. Where the need for leave is unforeseeable, as was here, the employee must provide notice of his intent to take leave to the employer as soon as practicable under the circumstances. 29 C.F.R. § 825.303(a). The notice must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* at §§ 825.303(b); 825.301(b). Such notice may

include "that a condition renders the employee unable to perform the functions of the job." *Id.* at § 825.303(b). The employee does not, however, need to be aware of his FMLA rights to invoke them: "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." *Id.*; § 825.301(b).

The burden then shifts to the employer. The employer must decide whether to designate the request for leave as FMLA-qualifying, and its decision to designate FMLA leave "must be based only on information received from the employee." 29 C.F.R. § 825.301(a). If the employer does not have enough information about the reason for an employee's request for leave, the employer should inquire further of the employee to determine whether leave is potentially FMLA-qualifying. *Id.* The employer must notify the employee whether leave will be designated as FMLA-qualifying within five business days after the employee requested leave, absent extenuating circumstances. *Id.*; § 825.300(d).

Throughout this time period, the employee must comply with the employer's "usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.303(c). If the employee does not comply with the employer's usual leave-request requirements, FMLA leave may be delayed or denied. *Id.* If, however, the employee provides notice and complies with the employer's attendance policy, the employer's failure to timely determine whether the employee's leave counts as FMLA-qualifying may constitute an interference with the employee's FMLA rights if it caused the employee to suffer harm. *Id.* at §§ 825.300(e); 825.301(e).

### 2. *Did Phillips Demonstrate a Qualifying Injury?*

We turn now to the district court's analysis of Phillips's FMLA-interference claim. Recall that to establish a prima facie case of interference, Phillips needed to demonstrate (1) he was eligible for the FMLA, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled. 29 U.S.C. § 2615; *Guzman*, 884 F.3d at 638. The district court decided questions of fact precluded summary judgment as to whether Phillips's rib injury entitled him to FMLA leave and whether he provided notice of his intent to take leave.

First we consider whether Phillips was entitled to FMLA leave. As applicable here, to be qualified for leave under the FMLA Phillips must have suffered a "serious health condition." 29 U.S.C. § 2612(a). The FMLA defines a serious health condition as an injury that involves inpatient care at a hospital or that requires continuing treatment by a health care provider, and that renders an employee unable to perform his job. 29 U.S.C. § 2611(11). Phillips argues his rib injury constituted a serious health condition that rendered him unable to perform his job as a metal trimmer. United disagrees. Viewing the evidence in the light most favorable to Phillips, *see King*, 872 F.3d at 837, a reasonable jury could find that Phillips's rib injury constituted a serious health condition. Phillips went to the emergency room and received x-rays for his fractured ribs. His wife testified he went back to the hospital six days later because his pain had not subsided. He then had a follow-up appointment with his primary care physician. A reasonable jury could find that Phillips's rib injury required inpatient care at a hospital or continuing treatment by a health care

provider and rendered him unable to perform his manual labor job, thus constituting a serious health condition. *See* 29 U.S.C. § 2612(a); *Valdivia v. Twp. High Sch. Dist. 214*, 924 F.3d 395, 398–99 (7th Cir. 2019) (reasonable jury could find that anxiety and depression diagnosis, coupled with four days of inpatient care at hospital, constituted serious medical condition).

### 3. *Did Phillips Provide Notice of his Intent to Seek Leave?*

Next, the parties disagree about whether Phillips provided notice to United about his intention to seek FMLA leave. The district court determined that questions of fact also precluded summary judgment on whether Phillips provided such notice.

On his first workday after his injury, Phillips followed United's procedures and left a voicemail to report his absence and noted his rib as the reason. Randy Snyder, the plant supervisor, and Linda Nichols, the human resources assistant, listened to that voicemail. A recording of that voicemail is not in the record; instead, Nichols's transcription of the voicemail (and Rhonda's testimony of the contents of the voicemail) are the only record evidence. Rhonda testified she also spoke to Nichols directly about Phillips's rib injury. But Nichols stated she did not recall being told any more about Phillips's injury than what was reported in Phillips's voicemail. Snyder testified he had also spoken to Rhonda about Phillips's "chest" area. Rhonda stated that, in addition to speaking with Snyder directly on at least one occasion, she had called United six or seven times trying to get a hold of Snyder to further discuss Phillips's injury, but she was never able to connect with him.

An employee merely calling in and declaring he is sick is insufficient to put the employer on notice that the employee may qualify for FMLA leave. *See Burnett v. LFW Inc.*, 472 F.3d 471, 480 (7th Cir. 2006). But "[t]he employee's notice obligation is satisfied so long as he provides information sufficient to show that he likely has an FMLA-qualifying condition." *Id.* at 479. In *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 953 (7th Cir. 2004), we ruled that an employee must communicate the reason for seeking leave, and not merely request FMLA leave. We concluded that providing a doctor's note that the employee's wife suffered "complications" during labor— without any additional details—would have sufficed to alert the employer that the employee may have been entitled to FMLA leave and would have been enough to trigger the employer's duty to request additional information to confirm the employee's entitlement. *Id.* Similarly, in *Righi*, we held that an employee's email mentioning his mother's diabetic coma was sufficient to alert the company that he may have qualified for FMLA leave. *See Righi*, 632 F.3d at 409.

The type of injury Phillips suffered, and the likelihood it would qualify for FMLA leave, falls somewhere on the spectrum between a "diabetic coma," *see Righi*, 632 F.3d at 409 (sufficient notice given when email mentioned mother was in diabetic coma), and merely reporting a "twisted knee." *See Walton v. Ford Motor Co.*, 424 F.3d 481, 486–87 (6th Cir. 2005) (employee informing supervisor he had "twisted his knee" was not sufficient notice of need for FMLA leave). Phillips introduced evidence that Snyder and Nichols knew of his "rib" injury: the call-in log shows as much, and Snyder admitted he had also spoken with Rhonda about Phillips's chest area. Further, neither Snyder nor Nichols appear to have received any specific certification or training on the FMLA. If United failed

to train its key personnel on how to recognize FMLA-qualifying leave, that may factor into deciding whether Phillips provided sufficient notice of his need for leave. Ultimately, in this case a jury must decide the factual question of whether the nature and amount of information the employee conveyed about his intent to seek leave put the employer on notice of that intent and required the employer to notify the employee whether the leave would be designated as FMLA leave. We do not reach a conclusion on this issue, however. We merely note that, based on the evidence introduced at summary judgment and construed in the light most favorable to Phillips, we agree with the district court that there are genuine issues of material fact as to whether United had sufficient notice that Phillips intended to take leave. *See* 29 C.F.R. §§ 825.303(b); 825.301(b); *Pagel v. TIN Inc.*, 695 F.3d 622, 628 (7th Cir. 2012) (for jury to decide whether employee informing manager about chest pain and appointments, coupled with manager admitting he was aware of employee's chest pain and had been told employee would be in hospital, constituted sufficient notice). At minimum, the evidence demonstrates a genuine dispute of fact as to whether United should have inquired further into Phillips's injury. *See* § 825.301(a).

### 4. *The District Court's Reliance on* **Righi**

Once an employer has enough information to determine an employee is seeking FMLA-qualifying leave, the employer needs to notify the employee whether the requested leave will be designated as FMLA leave within five business days, absent extenuating circumstances. 29 C.F.R. §§ 825.301(a); 825.300(d). It is undisputed United failed to determine and notify Phillips whether his request for leave would be designated as FMLA leave. Thus, United could have violated the

FMLA by not informing Phillips of his FMLA-leave designation.

But it is also true Phillips stopped following United's attendance policy and failed to call in to report his absences. And if an employee does not comply with the employer's usual leave-request requirements, FMLA leave may be delayed or denied. 29 C.F.R. § 825.303(c); *see also Righi*, 632 F.3d at 411. So Phillips also may have failed to abide by the FMLA regulations.

Even if Phillips failed to comply with the FMLA by failing to report his absences, he did so *after* United would have violated the FMLA. Phillips stopped calling in to work at least nine business days after he first reported his rib injury to United.[2] Under the regulations, United had five business days after receiving notice of Phillips's rib injury to determine whether he qualified for FMLA leave. 29 C.F.R. §§ 825.301(a); 825.300(d).

Rather than consider this interplay, the district court focused solely on Phillips's conduct and, applying *Righi*, ruled that Phillips's failure to follow United's attendance policies foreclosed his claim.[3] *See Righi*, 632 F.3d at 411; 29 C.F.R. § 825.303(c). The FMLA regulations state, and *Righi* provides, that an employee's failure to abide by an employer's usual attendance policies may foreclose an FMLA claim. 29 C.F.R. § 825.303(c); *Righi*, 632 F.3d at 411. But not controlled by the

---

[2] Phillips first reported his rib injury to United on July 6 and stopped calling in to report his absences on July 20. (Call Log, Doc. 35-2, at 42; United's Mot. for Summ. J., Doc. 34, at 9.)

[3] We do not fault the district court for this, however, as the parties' briefs were sparse on this issue.

regulations or *Righi* is whether an employer's preceding violation of the FMLA is excused by an employee's subsequent failure to comply with the regulations. That fact pattern is squarely presented here; that was not the case in *Righi*, though, where the employee had not provided adequate notice of his injury and the employer did not otherwise violate the FMLA (such as by failing to inform the employee of his FMLA-qualifying leave). *See id.* To us, this presents an issue which merits further examination in the district court. On remand, the district court should examine whether *Righi* extends to this situation.[4] It may choose to do so by ordering supplemental briefing on this issue and reconsidering or inviting new summary judgment briefing. *See, e.g.*, *Raybourne v. Cigna Life Ins. Co.*, 576 F.3d 444, 450 (7th Cir. 2009) (remand appropriate for district court to analyze material issue in first instance).

### 5. *Was Phillips Injured from United's Violation?*

If the district court concludes *Righi* does not extend so far as to absolve an employer from violating the FMLA if an employee at some point also fails to comply with the FMLA, the next question is whether United's failure to determine

---

[4] A hypothetical may place this issue into sharper focus: Say Phillips had continued to report his absences to United for one month (instead of the two weeks he did), but United never notified him of his rights under the FMLA. Then after that month Phillips did not report absences for three consecutive days and United fired him for failing to follow its policies. Would United escape responsibility under the FMLA for taking advantage of Phillips's misstep? United's argument could be so read, given its heavy reliance on *Righi*'s holding that "an employee's failure to comply with his employer's internal leave policies and procedures is a sufficient ground for termination and forecloses an FMLA claim." *Righi*, 632 F.3d at 411.

whether Phillips's leave request counted as FMLA-qualifying interfered with Phillips's FMLA rights. *See* 29 C.F.R. § 825.300(e). Phillips cannot prevent summary judgment by creating a fact question over United's lack of compliance with the FMLA—he must show he was injured by United's violation. *See* § 825.301(e). Violation of the FMLA is not enough to establish injury; instead, Phillips must show he was prejudiced by United's violation. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (explaining that FMLA "provides no relief unless the employee has been prejudiced by the violation"); *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 764 (7th Cir. 2008) (holding no interference because employee did not allege that employer's failure to provide FMLA information prejudiced her).

This court has not specifically addressed what constitutes "prejudice" arising out of an employer's failure to provide FMLA information. *See Ridings*, 537 F.3d at 766 ("Certainly, if [the plaintiff] had presented any evidence that the use of the term 'intermittent' had in any way influenced her decision not to turn in the FMLA forms, we would consider that fact and the reasonable inferences drawn therefrom in favor of [the plaintiff]."); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 910 (7th Cir. 2008) ("But even if [employer] was obliged to advise [employee] that his certification was incomplete, there was no harm caused by [employer's] breach of this obligation unless [employee] would have been able to cure the deficiency in a manner that entitled him to FMLA leave.").

A recent opinion of the Fourth Circuit provides some guidance: "Prejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his

leave differently." *Vannoy v. Fed. Res. Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016) (citing cases). The First, Third, and Fifth Circuits have reached similar conclusions. *See Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 748 F.3d 418, 423 (1st Cir. 2014); *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 318–19 (3d Cir. 2014); *Downey v. Strain*, 510 F.3d 534, 541 (5th Cir. 2007). Indeed, the regulations state an injury occurs when an employee would have structured his leave differently had the employer properly designated the requested leave as being taken under the FMLA. *See* 29 C.F.R. § 825.301(e). Thus, if Phillips can show prejudice—in other words, that he would have structured his leave differently had he received the proper information, *see Ragsdale*, 535 U.S. at 90—his claim may survive summary judgment.

The district court here did not address whether Phillips was prejudiced, so it should consider that matter on remand. Rhonda attested had Phillips known United offered FMLA leave, he would have taken the leave. Other than that statement the record is undeveloped and does not reflect whether Phillips would have acted differently (i.e., whether he would have sought leave under the FMLA) had United provided him with the requisite information. *Compare Bellone*, 748 F.3d at 423 (ruling that plaintiff failed to demonstrate that he would have structured leave differently if defendant had given him proper notice), *with Hannah P. v. Coats*, 916 F.3d 327, 347 (4th Cir. 2019) ("Here, the record contains evidence that if [the plaintiff] had known that the FMLA protected her position, she would have used only sick leave for her leave of absence."), *and Wallace v. FedEx Corp.*, 764 F.3d 571, 591 (6th Cir. 2014) ("FedEx's failure to provide notice was the proximate cause of [plaintiff's] termination, meaning that its failure to comply with the regulations prejudiced [her].").

**B. Retaliation**

Phillips's challenge to the district court's ruling on retaliation is poorly developed and he does not address the district court's reasoning. He asserts because United interfered with his rights under the FMLA, United also retaliated against him by firing him for seeking FMLA benefits.

Even if we assume Phillips engaged in a protected activity and United took an adverse employment action against him, Phillips still failed to establish any causal connection between his alleged attempt to seek relief under the FMLA and his discharge. *See Curtis*, 807 F.3d at 220. The only evidence Phillips adduced is suspicious timing between his supposed request for FMLA leave and his firing, and suspicious timing by itself rarely is enough to overcome summary judgment. *See id.* at 221; *Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 751 (7th Cir. 2009). Nor does Phillips attempt to dispute United's proffered reason for firing him: he did not show up to work and he failed to report his absences. "Summary judgment for the employer is proper where the employer provides undisputed evidence that the adverse employment action is based upon the employee's poor job performance." *Curtis*, 807 F.3d at 221. The district court thus properly entered judgment in favor of United on Phillips's retaliation claim.

### III. Conclusion

For these reasons, we AFFIRM IN PART the district court's judgment on Phillips's retaliation claim and REMAND IN PART Phillips's interference claim for further proceedings consistent with this order.