# MEMORANDUM DECISION

## ON REHEARING

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 02 2018, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Daniel Siewers
Katie Kotter
Hart Bell, LLC
Vincennes, Indiana

ATTORNEY FOR APPELLEE

Michael C. Healy
Indiana Civil Rights Commission
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Knox County Association for Retarded Citizens, Inc., <br> *Appellant-Defendant,* <br><br> v. <br><br> Mellissa (Cope) Davis, <br> *Appellee-Plaintiff* | July 2, 2018 <br><br> Court of Appeals Case No. 93A02-1701-EX-141 <br><br> Appeal from the Indiana Civil Rights Commission <br><br> Docket No. EMha12091467 |

**May, Judge.**

[1] The Knox County Association for Retarded Citizens, Inc. ("KCARC") requests rehearing of our opinion affirming the Indiana Civil Right Commission's ("ICRC") conclusion that the KCARC engaged in an unlawful discriminatory practice when it terminated Mellissa Davis' employment with KCARC. We grant rehearing to clarify, but we affirm our original opinion in all respects.

[2] In our opinion, when discussing whether the ICRC erred when it determined Davis was a qualified individual as defined by the Americans with Disabilities Act ("ADA"), we stated:

> Although KCARC did not engage in the interactive process of determining whether a reasonable accommodation was available, it still can defeat Davis' claim if it demonstrated no reasonable accommodation was possible. The ICRC found: "KCARC could assign a third DSP to the house to assist in areas Davis could not perform as it did with [other allegedly similarly situated employees]." (App. Vol. II at 12.) Based on this unchallenged finding, KCARC could have implemented a reasonable accommodation. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."). Thus, KCARC failed to meet its burden to demonstrate no reasonable accommodation was available.

> In summary, Davis was a qualified individual with a disability. Prior to her syncopal episode, she was able to perform the essential functions of her job without reasonable accommodation. After her syncopal episode, she was restricted from performing some of the essential functions of her job, triggering KCARC's duty to engage in an interactive process with Davis to determine if she could perform the duties of her job with reasonable accommodation. KCARC did not engage in this

process, and instead terminated Davis. Contrary to O'Dell's allegation, such accommodation was possible, as shown by the ICRC's uncontested finding. Thus, we conclude KCARC discriminated against Davis based on her disability when it fired her instead of attempting to determine if there was a reasonable accommodation available. *See*, *e.g.*, *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 807 (7th Cir. 2005) (genuine issue of material fact existed regarding the interactive process between employer and employee to determine a reasonable accommodation was feasible when evidence a reasonable accommodation was available was presented).

*Knox Cty. Ass'n for Retarded Citizens, Inc. v. Davis*, 2018 WL 1833607 at *13-*14 (Ind. Ct. App. April 18, 2018). On rehearing, KCARC argues it challenged the finding we claimed it did not, and based on that challenge, our holding that Davis was a qualified individual under the ADA should be reversed.

[3] The challenged finding was classified by the trial court as a conclusion and stated, in its entirety:

> The ALJ concludes Davis could have performed the essential functions of the job of cooking, cleaning, grocery shopping, and providing day-to-day assistance to residents even in her condition. KCARC points out that Davis would not be able to run after individuals who are "flight risks" or protect herself from residents who may be physically aggressive. While the ALJ agrees with this point, the same would be true for an individual without a disability if the DSP was slower or weaker than the residents. Further, chasing after residents or defending oneself from aggressive residents were not "essential functions" of the job. Davis presented no evidence to answer the question on how she would perform the duties as a DSP with the restrictions. If Davis was to remain in the house, her ability to assist another DSP with a resident would be limited. Further, Davis' inability

to move quickly in times of emergencies would be restricted as well. While that may be the case, KCARC did not attempt to see what alternatives were available for Davis in Group Home 11. KCARC could assign a third DSP to the house to assist in areas Davis could not perform as it did with Akers and another DSP who could not administer medication.

(App. Vol. II at 11-12.)

[4] "[W[hile an employer's failure to engage in the interactive process alone is not an independent basis for liability, it is actionable 'if it prevents identification of an appropriate accommodation for a qualified individual.'" *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014) (quoting *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013)). To prove the employer ignored an appropriate accommodation for a qualified individual, the claimant must provide evidence that a reasonable accommodation was available. *Id*.

[5] Here, it is undisputed that KCARC failed to engage in a discussion with Davis regarding accommodation of her limitations. O'Dell admitted she did not engage in the interactive process because she did not believe it to be necessary, and when asked whether the process would have changed her analysis of whether a reasonable accommodation could be made for Davis, she answered in the negative. KCARC argues Davis did not fulfill the second part of the analysis - that possible accommodations were available. We disagree.

[6] In her rebuttal interview submitted as part of the disability claims process on December 21, 2012, Davis indicated in response to certain interrogatories:

3). Respondent states you provided medical documentation on 9/4/12 which [indicated] that part of your work restrictions includes [sic] minimizing any kind of bending, stooping, rapid or repetitive rotational movements such as turning from side to side and that you should not lift anything greater than 10 pounds, and that you should be limited to job functions that would involve sitting, without a lot of position changes. How do you respond?

> [Davis]: That is [sic] my work restrictions[. T]hey didn't even try to accommodate the restrictions.

4). Respondent states that as a Direct Support Professional it requires that you assist and train and supervise all physically challenged individuals being served in the home. Respondent states that it does not have a position open that would enable you to primarily sit for an 8 hour shift, how do you respond?

> [Davis]: They could have worked out something like answering the phones or something; I could have done receptionist work[.]

5). Respondent states that your physician did not give the diagnos[is] of what your medical condition is, nor did he indicate that you have a disability? How do you respond?

> [Davis]: I didn't think that he had to tell them what I was dealing with[. N]o he did not tell them what was dealing with. He just gave me work restrictions. They could have placed me as a full time teacher assistant[;] this job entails mostly sitting as an assistant, and they never offered me light duty of any sort.

6). Did [Respondent] engage in the interactive process with you regarding your work restrictions?

> [Davis]: The only thing they said to me was that since I could not perform my job functions of my previous position, I was being let go because they had no positions available to which I could sit all day, but they did have positions in the office I could have answered the phones, or like I said, they could have made me a teacher's assistant. They never even tried.

(Ex. Vol. I at 143-4.)

[7] Additionally, in the hearing before the Administrative Law Judge, Davis testified:

> [Healy[1]]:    Okay. Do you think you needed an accommodation, given what it was that you were doing day in and day out at KCARC, or were you able to still do much of your jobs?
>
> [Davis]:    At Group Home 11?
>
> [Healy]:    Yes.
>
> [Davis]:    I could have -- I still could have been able to do my job.
>
> [Healy]:    And why do you believe that?

---

[1] Michael Healy was Davis' attorney.

[Davis]:     Dr. Nibel had put me on medication to keep me from getting dizzy.  He was wanting to run more tests to find out what -- what could have caused the -- the seizure.

(Tr. Vol. I at 80.)  Davis' attorney then introduced into evidence information regarding the jobs at KCARC available at the time of Davis' termination.  The jobs included Office Support Staff, Waiver House Manager, Waiver Direct Support Professional/Staff, and Assistant Manager of a residential home. While each job had a qualification that Davis did not meet, for example, the Office Support Staff position required the applicant have office experience, Davis testified, regarding the qualifications of a DSP and how those requirements factored into KCARC's decision to hire her:

[Healy]:     . . . When you were hired in as a Group Home Direct Support Professional, you did not have any experience working with individuals with developmental disabilities before that; is that correct?

[Davis]:     That's correct.

[Healy]:     But you were still hired despite the fact they had asked for one year's experience?

[Davis]:     Yes.

(Tr. Vol. I at 84.)

[8]     Amy O'Dell, Human Resources Director for KCARC testified she did not discuss the positions available at the time with Davis because she knew Davis

was not qualified for them. However, she did not engage with Davis to determine her eligibility for those positions or temporary work restrictions to be accommodated in her position at the time. KCARC cannot contend Davis failed to argue that there were available accommodations when she was never afforded the opportunity to begin that conversation. KCARC's inaction is precisely the type of bad faith imagined by the ADA - it is not the sole responsibility of an employee, who may or may not be well-versed in the law, to identify the need for an accommodation, ask for an accommodation, and provide all possible accommodations to an employer, who is required by law to have policies to accommodate disabled employees. *See Rednour v. Wayne Twp*., 51 F.Supp.3d 799, 828 (S.D. Ind. 2014) (employer violated ADA when it knew employee had light duty restrictions and unilaterally concluded that no accommodation was available before terminating employee, despite suggested accommodation from employee's doctor).

[9] We affirm our earlier opinion in all respects.

Baker, J., and Altice, J., concur.