# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1382

STEVE AUBUCHON,

*Plaintiff-Appellant,*

v.

KNAUF FIBERGLASS, GMBH,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 01-392-C B/F—**Sarah Evans Barker**, *Judge.*

_____

ARGUED OCTOBER 20, 2003—DECIDED MARCH 8, 2004

_____


Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Steve Aubuchon sued his former
employer, Knauf Fiberglass, for violations of the Family and
Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, and he appeals
from the grant of summary judgment in favor of Knauf. So
far as bears on this case, the Act entitles an employee to
twelve work weeks of leave without pay during any twelve-
month period if he needs the leave in order to care for his
spouse's "serious health condition." 29 U.S.C. §
2612(a)(1)(C). A "serious health condition" is sensibly
defined in a regulation issued by the Department of Labor

to include "any period of incapacity due to pregnancy, or for prenatal care." 29 C.F.R. § 825.114(a)(2)(ii); see *Navarro v. Pfizer Corp.*, 261 F.3d 90, 95 (1st Cir. 2001); *Martyszenko v. Safeway, Inc.*, 120 F.3d 120, 122 (8th Cir. 1997). If the need for the leave is foreseeable at least 30 days in advance, the employee must provide that much notice, 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a), so that the employer can minimize the disruptive effect of an unscheduled leave on his business. But if, though the need is foreseeable, "30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). Similarly, in the case in which the need for the leave is not foreseeable at least 30 days in advance, notice must be given "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

It is important to note that if the required notice, whether 30 days or "as soon as practicable," is not given, the employer can deny leave even if the spouse does have a serious health condition. See *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008-09 (7th Cir. 2001); *Bailey v. Amsted Industries Inc.*, 172 F.3d 1041, 1046 (8th Cir. 1999); *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). Conditioning the right to take FMLA leave on the employee's giving the required notice to his employer is the quid pro quo for the employer's partial surrender of control over his work force. Employers do not like to give their employees unscheduled leave even if it is without pay, because it means shifting workers around to fill the temporary vacancy and then shifting them around again when the absentee returns. The requirement of notice reduces the burden on the employer.

Mrs. Aubuchon's predicted date of delivery was August 19, 2000. Her pregnancy thus far had been uneventful. A

day or two before the nineteenth she went into labor but it proved to be a false alarm and she did not go into "real" labor until September 1. The baby was born the next day and mother and child left the hospital on the fourth. At argument Aubuchon's lawyer told us that Mrs. Aubuchon began to have contractions a month before her expected date of delivery, but there is no support for this in the record.

The plaintiff, Steve Aubuchon, first notified his employer orally that he wanted leave under the Family Medical Leave Act on August 21, shortly after the false labor. He did not give complications, false labor, or a serious health condition as a reason. He just said he wanted to stay home with his wife until she gave birth. Being pregnant, as distinct from being incapacitated because of pregnancy or experiencing complications of pregnancy that could include premature contractions which unless treated by drugs or bed rest might result in the premature birth of the baby, is not a serious health condition within the meaning of the statute or the applicable regulations. 29 C.F.R. §§ 825.112(c), .114(a)(2)(ii), (e) ("an employee who is pregnant may be unable to report to work because of severe morning sickness"); *Navarro v. Pfizer Corp.*, *supra*, 261 F.3d at 95; *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1150-51 (10th Cir. 1999); *Pendarvis v. Xerox Corp.*, 3 F. Supp. 2d 53, 55-56 (D.D.C. 1998); *Gudenkauf v. Stauffer Communications, Inc.*, 922 F. Supp. 465, 474-76 (D. Kan. 1996). Wanting to stay home with one's wife until she has the baby, while understandable, is not the same thing as wanting to stay home to care for a spouse who has a serious health condition. 29 U.S.C. § 2612(a)(1)(C); 29 C.F.R. § 825.112(a)(3); *Sahadi v. Per-Se Technologies, Inc.*, 280 F. Supp. 2d 689, 698 (E.D. Mich. 2003); *Chenoweth v. Wal-Mart Stores, Inc.*, 159 F. Supp. 2d 1032, 1035, 1037-39 (S.D. Ohio 2001); see *Caldwell v. Holland of Texas, Inc.*, 208 F.3d 671 (8th Cir. 2000).

Maybe Mrs. Aubuchon did have a serious health condition connected with her false labor. The record contains a note from her doctor saying that she was experiencing "complications," although they are not explained—but the note was submitted to Knauf after Aubuchon's request for leave had been denied; and the employer has, as we said, a right to be notified of the existence of the serious health condition as soon as practicable. The requirement of notice is not satisfied by the employee's merely demanding leave. He must give the employer a reason to believe that he's entitled to it. *Collins v. NTN-Bower Corp.*, *supra*, 272 F.3d at 1008; *Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 312-13 (7th Cir. 1998); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998). If you have brain cancer but just tell your employer that you have a headache, you have not given the notice that the Act requires.

On September 1, Aubuchon followed up his oral request for FMLA leave by giving his employer a filled-in form that the employer furnishes for requesting such leave. But neither in that form, nor in subsequent communications with his employer prior to September 4, when his request for FMLA leave was denied, did Aubuchon say that his wife was having complications. Meanwhile, he had not shown up for work since sometime before August 19, and his unexcused absence put him over the limit allowed to employees by Knauf's attendance policy and so Knauf fired him. Aubuchon's union grieved his discharge, and Knauf agreed to reinstate him without backpay, and this was done. But then the company discovered that Aubuchon had falsified his original employment application by failing to disclose that he had been fired by previous employers— for excessive absenteeism!—and so it fired him again, this time for keeps.

It wasn't until after he was fired the first time that

Aubuchon produced the note from his wife's obstetrician saying that she had had complications in her pregnancy. That was too late, as we have said. Employees should not be encouraged to mousetrap their employers by requesting FMLA leave on patently insufficient grounds and then after the leave is denied obtaining a doctor's note that indicates that sufficient grounds existed, though they were never communicated to the employer.

Aubuchon claims that basing a request for FMLA leave on patently insufficient grounds should operate as a signal to the employer that the employee may not understand the contours of the duty of notice. The employee may think that if his wife is having a complicated pregnancy he has only to tell his employer that he needs to stay home with his wife until the baby is born; he needn't state a reason. Some of the regulations that the Department of Labor has issued suggest that merely by demanding leave, the employee triggers a duty on the part of the employer to determine whether the requested leave is covered by the FMLA. See 29 C.F.R. §§ 825.302(c), 303(b). That is an extreme position, as most leaves requested by employees are not based on a ground entitling them to leave under the FMLA, so that if the position were accepted the consequence would be to place a substantial and largely wasted investigative burden on employers. The position is rejected, rightly in our view, by the *Collins*, *Stoops*, and *Satterfield* cases that we cited earlier, and also by *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997). These cases hold that unless the employer already knows that the employee has an FMLA-authorized ground for leave, as in *Miller v. GB Sales & Service, Inc.*, 275 F. Supp. 2d 823, 829 (E.D. Mich. 2003), the employee must communicate the ground to him; he cannot just demand leave. Which is all that Aubuchon did.

So that the scope of our holding is clear, we emphasize

that the employee's duty is merely to place the employer on notice of a probable basis for FMLA leave. He doesn't have to write a brief demonstrating a legal entitlement. He just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave. That is enough to trigger the employer's duty to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement. 29 C.F.R. §§ 825.302(c), .303(b), .305(d); *Cavin v. Honda of America Manufacturing, Inc.*, 346 F.3d 713, 723-24 (6th Cir. 2003). The note from Mrs. Aubuchon's obstetrician indicating that she was having "complications" would have sufficed, despite the absence of details, had Aubuchon submitted it to Knauf before the company acted on his request for leave.

It is worthy of note that Knauf did not rely on the absence of reasons, in Aubuchon's initial oral request for leave, as a basis for denying the request. Instead it had him fill out a form that required him to specify the medical condition that justified his request. 29 C.F.R. § 825.302(d). He failed to do so. He had no excuse for the failure.

Aubuchon's second claim—that the company retaliated against him when it fired him the second time, in violation of the FMLA, which forbids retaliation for invoking one's statutory rights, 29 U.S.C. § 2615 (a)(2); *Horwitz v. Board of Education of Avoca School Dist. No. 37*, 260 F.3d 602, 616-17 (7th Cir. 2001); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)—need not detain us for long. Aubuchon admittedly falsified his job-application form, which is admitted to be a mandatory ground for discharge under Knauf's rules, and there is no evidence that the policy is applied more harshly to employees who make legal claims against the company than against other employees who falsify their application forms. In short, there is no

evidence that the motive for firing Aubuchon was retaliatory. Nor is this a case in which the employer fails to discover lawful grounds for discharge until after firing the employee on an improper ground. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995); *Hartman Bros. Heating & Air Conditioning, Inc. v. NLRB*, 280 F.3d 1110, 1114-16 (7th Cir. 2002); *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1047-48 (7th Cir. 1999). Aubuchon was not fired on an improper ground.

AFFIRMED.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*