IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARIA G. ESPINDOLA, | ) | No. 35262-5-III |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| APPLE KING, a limited liability company, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, A.C.J. — Under the state and federal family medical leave acts, an employee who is incapacitated due to a serious medical condition, such as pregnancy, has the right to take protected leave from work. This right persists even when an episode of incapacitation is unforeseeable. Should an employee invoke protected leave, including unforeseeable protected leave, an employer cannot use the employee's actions as a negative factor in a subsequent employment decision. Doing so would constitute retaliation in violation of state and federal law.

While employed with Apple King, Maria Espindola discovered she was pregnant. Over the course of her pregnancy, Ms. Espindola experienced medical complications that caused her to miss work. Apple King was aware of Ms. Espindola's pregnancy and knew she had experienced some health problems. Nevertheless, Apple King used some of Ms. Espindola's work absences as negative factors in its ultimate decision to terminate employment. According to Apple King, Ms. Espindola was properly penalized because she failed to comply with the company's attendance policy, requiring at least one day's advance notice of all medical absences not involving hospitalization.

Apple King's reliance on its attendance policy is unavailing. Because Apple King's policy did not account for an employee's right to take unforeseeable protected leave, Ms. Espindola's failure to comply with the policy was not a legitimate basis for an adverse employment action. Given that Ms. Espindola has produced sufficient facts to demonstrate Apple King was on notice of her need for unforeseeable protected leave, Apple King is not entitled to summary judgment on Ms. Espindola's retaliation claim. This matter is therefore reversed.

## FACTS

Apple King operates a fruit warehouse and packing facility in Yakima County, Washington. Maria Espindola worked for Apple King from August 2, 2007, to April 20,

2012. On May 1, 2011, Apple King implemented an attendance policy. Ms. Espindola

received and signed a copy of the policy on August 14, 2011. The policy provides:

> As of May 1st, 2011, [Apple King] will put into practice a revised 24 point
> attendance scoring system. Each employee will have 24 points to use up
> between May 1st and the last day of April. You will start with 0 points and
> each attendance infraction will be counted in the following manner.
>
> NO POINTS will be counted for appts. with 24 hr. notice and proof of appt.
> 2 Points for not giving 24 hr. notice regardless of proof
> 2 Points for being Tardy
> 2 Points for leaving before end of shift without proof of appointment
> 3 Points per absence without proof of appointment (unless you use a
> Vacation Day)
> 12 Points for a NO CALL-NO SHOW
> No points will be counted for L&I appointments.
>
> If you reach the 24 point mark before the designated time, your employment
> with Apple King, LLC will be terminated. It is very important to
> understand that this will be the same for all Packing House employees.
> Every 1st of May each employee will start with 0 points once again only if
> they have managed not to reach the 24 point mark by the end of the last day
> of April. We strongly encourage you to set up your appointments on your
> day(s) off.

Clerk's Papers (CP) at 233.

According to an Apple King representative, employees were verbally notified that

no points would be assessed against them for attending funerals or for emergencies such

as hospitalizations or car accidents. Apple King's attendance policy did not reference the

federal or state medical leave acts. Nor did the policy explain how Apple King would

3

account for leave that is protected under state or federal law. According to testimony from Apple King, the decision of whether to assess points for an employee absence is determined solely by the company's attendance policy.

In June or July 2011, Ms. Espindola discovered she was pregnant and reported her condition to her supervisor. Ms. Espindola was then absent from work on July 20, 21, and 22. She produced a doctor's note dated July 21 stating she had been prescribed two days' bed rest. Pursuant to Apple King's attendance policy, Ms. Espindola was assessed two points for her absence on July 20 because she only provided same-day notice of a medical appointment.

In August 2011, Ms. Espindola developed kidney stones. Ms. Espindola was hospitalized from August 21 to 25, 2011, and submitted a doctor's note stating she was not clear to return to work until after a follow-up appointment on August 31. The doctor's note did not provide the reason for Ms. Espindola's hospitalization, but according to Ms. Espindola she had been hospitalized due to the kidney stones. Apple King did not assess Ms. Espindola any attendance points for her hospitalization. It is unclear whether Apple King knew of the reason for Ms. Espindola's hospitalization, but the company did at least know that Ms. Espindola had been hospitalized during the course of her pregnancy.

In the months following her hospitalization, Ms. Espindola had numerous medical appointments. Apple King was advised of the appointments, and Ms. Espindola was not assessed any attendance points for those absences. Ms. Espindola was also permitted to take time to check her blood sugar at work after reporting that she had been diagnosed with gestational diabetes. Ms. Espindola's gestational diabetes did not cause her to miss work.

The last full month of Ms. Espindola's pregnancy was December 2011. During that month, Ms. Espindola left work early on three occasions. She was assessed two attendance points on each date. Also in December, Ms. Espindola missed a day of work and provided same-day notice of her absence. Ms. Espindola was assessed three points on this occasion. Ms. Espindola did not provide any doctors' notes explaining her December absences. However, Ms. Espindola has testified that she had told her supervisor she was in debilitating pain from kidney stones. According to Ms. Espindola, her supervisor provided permission to either leave work early or stay at home, as at times she was unable to work due to the pain. Apple King did not request medical documentation from Ms. Espindola to verify her explanations.

Ms. Espindola began her maternity leave on January 9, 2012, and returned to work on March 4. During her maternity leave, Ms. Espindola reportedly had her kidney stones

removed. Apple King did not assess Ms. Espindola any attendance points for her maternity leave.

Apple King fired Ms. Espindola on April 20, 2012, because she had exceeded the 24 points allowed annually by the company's attendance policy. The following chart illustrates Ms. Espindola's absences from work between May 1, 2011, and April 20, 2012, and the points she was assessed under the attendance policy:

| Date | Disposition | Reason for Absence and/or Disposition | Points | Record (CP) |
|---|---|---|---|---|
| May 20, 2011 | Unexcused | Left work early (late proof of appointment) | 2 | 239-40 |
| June 6, 2011 | Excused | Dental appointment | 0 | 252-53 |
| June 10, 2011 | Excused | Doctor appointment | 0 | 252-53 |
| July 8, 2011 | Excused | Illness (bladder infection) | 0 | 254-55 |
| July 12, 2011 | Excused | Doctor appointment | 0 | 256-57 |
| July 20, 2011 | Unexcused | Left work early (same day notice of appointment) | 2 | 38, 50, 258 |
| July 21, 2011 | Excused | Illness (note from doctor dated July 21 calls for 2 days bed rest) | 0 | 38, 50, 258-59 |

| Date | Disposition | Reason for Absence and/or Disposition | Points | Record (CP) |
|---|---|---|---|---|
| July 22, 2011 | Excused | Illness (note from doctor dated July 21 calls for 2 days bed rest) | 0 | 38, 50, 258-59 |
| Aug. 1, 2011 | Excused | Doctor appointment | 0 | 260-61 |
| Aug. 21 to 25, 2011 | Excused | Hospitalization (note from doctor states she cannot return to work until after her follow-up appointment on Aug. 31) | 0 | 262-63 |
| Sept. 9, 2011 | Excused | Doctor appointment (for imaging studies) | 0 | 264-65 |
| Sept. 16, 2011 | Excused | Doctor appointment | 0 | 266-67 |
| Sept. 17, 2011 | Excused | Left work early (illness) | 0 | 266 |
| Oct. 11, 2011 | Excused | Doctor appointment | 0 | 268-69 |
| Oct. 12, 2011 | Excused | Doctor appointment (for laboratory studies) | 0 | 268, 270 |
| Oct. 25, 2011 | Unexcused | Doctor appointment (no excuse slip) | 2 | 243 |
| Nov. 10, 2011 | Unexcused | Absent without advance notice (called same day) | 3 | 134-35, 244, 756 |
| Nov. 22, 2011 | Excused | Doctor appointment | 0 | 271 |
| Dec. 9, 2011 | Unexcused | Left work early | 2 | 245 |
| Dec. 19, 2011 | Unexcused | Left work early | 2 | 246 |
| Dec. 20, 2011 | Unexcused | Absent (called same day) | 3 | 134-35, 246 |
| Dec. 27, 2011 | Excused | Doctor appointment | 0 | 248 |
| Dec. 30, 2011 | Unexcused | Left work early | 2 | 248 |

| Date | Disposition | Reason for Absence and/or Disposition | Points | Record (CP) |
|---|---|---|---|---|
| Jan. 9 to Mar. 2, 2012 | Excused | Maternity leave | 0 | 38, 50, 59, 237, 306-07 |
| Mar. 6, 2012 | Excused | Doctor appointment (for her baby) | 0 | 273-74 |
| Mar. 23, 2012 | Unexcused | Left work early due to suspension (work performance issue) | 2 | 249, 278 |
| Mar. 24, 2012 | Unexcused | Suspension (work performance issue) | 3 | 249, 278 |
| Mar. 26, 2012 | Unexcused | Suspension (work performance issue) | 3 | 250, 278 |
| Apr. 4, 2012 | Excused | Doctor appointment (for her baby) | 0 | 275-76 |
| Apr. 17, 2012 | Unexcused | Left work early | 2 | 251 |
| Ms. Espindola's employment was terminated on April 20, 2012, for accumulating 28 adverse attendance points | | | | 237, 251 |

In July 2014, Ms. Espindola filed suit in Yakima County District Court alleging

Apple King had terminated her employment in a discriminatory and retaliatory manner

because she missed work due to serious health conditions. In January 2016, the district

court dismissed most of Ms. Espindola's claims on summary judgment, leaving only

claims for unlawful discrimination and retaliation under the state and federal family

medical leave acts. In a letter decision dated June 22, 2016, the district court also granted

summary judgment to Apple King on the remaining claims. The superior court affirmed

on appeal. Our court granted discretionary review pursuant to RAP 2.3(d)(3).

8

ANALYSIS

We review orders on summary judgment de novo. *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014); *Mikolajczak v. Mann*, 1 Wn. App. 2d 493, 496, 406 P.3d 670 (2017). Under this standard, our court engages in the same inquiry as the trial court, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Lyons*, 181 Wn.2d at 783; *Mikolajczak*, 1 Wn. App. 2d at 496-97.

*The federal and state medical leave acts*

The Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654; 29 C.F.R. pt. 825 was implemented by the federal government to address "inadequate job security for employees who have serious health conditions that prevent them from working temporary periods." 29 U.S.C. § 2601(a)(4). The purposes of the FMLA include the need "to balance the demands of the workplace with the needs of families," and "to entitle employees to take reasonable leave for medical reasons" including "the birth . . . of a child." 29 U.S.C. § 2601(b)(1), (2). Similarly, Washington's Family Leave Act (WFLA), chapter 49.78 RCW, states it is "in the public interest to provide reasonable leave for medical reasons." RCW 49.78.010. The WFLA mirrors the FMLA and provides that courts are to interpret its provisions in a manner consistent with similar

provisions of the FMLA. RCW 49.78.410 (The WFLA "must be construed . . .

consistent[ly] with similar provisions, if any, of the [FMLA] . . . and [provide]

consideration to the rules, precedents, and practices of the federal department of labor

relevant to the [FMLA]."); *Shelton v. Boeing Co.*, 702 Fed. App'x 567, 568 (9th Cir.

2017); *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash.

2013).

The substantive right enjoyed by employees under the FMLA and WFLA is the

ability to take 12 weeks' leave from work per year for protected health or family reasons

without suffering negative employment consequences. 29 U.S.C. §§ 2612(a)(1), 2614(a);

RCW 49.78.220, .280. To safeguard this right, both the FMLA and WFLA prohibit

employers from discriminating and retaliating against employees who engage in protected

conduct.[1] The laws recognize two types of prohibited discrimination and retaliation.

First, 29 U.S.C. § 2615(a)(2) and RCW 49.78.300(1)(b), make it unlawful for an

employer "to discharge or in any other manner discriminate against any individual for

opposing any practice made unlawful by" the FMLA and WFLA. Second, 29 C.F.R.

---

[1] The medical leave statutes also prohibit employers from interfering with an employee's exercise of FMLA/WFLA rights. 29 U.S.C. § 2615(a)(1); RCW 49.78.300(1)(a). However, this case does not involve a straight interference claim, such as what might be asserted if an employer refused to grant an employee the substantive right to reinstatement after the employee exercised protected leave.

§ 825.220(c)[2] "prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."[3]

*The legal test applicable to Ms. Espindola's FMLA/WFLA claim*

Ms. Espindola's complaint alleged the second type of protection from retaliation, i.e., that she was terminated for exercising rights protected by the FMLA and WFLA. 29 C.F.R. § 825.220(c). Pursuant to this form of protection, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring,

---

[2] The statutory source for this regulation is an area of confusion and dispute. *Compare Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (retaliation for exercising FMLA rights arises under 29 U.S.C. § 2615(a)(2)), and *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) (same), and *Loveland v. Emp'rs Mut. Cas. Co.*, 674 F.3d 806, 810-11 (8th Cir. 2012) (same) *with Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) (retaliation for exercising FMLA rights arises under 29 U.S.C. § 2615(a)(1) and (2) as well as 29 C.F.R. § 825.220(c)), and *King v. Preferred Technical Grp.*, 166 F.3d 887, 891 (7th Cir. 1999) (same), and *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159-60 (1st Cir. 1998) (same), *and with Bachelder v. Am. W. Airlines*, 259 F.3d 1112 (9th Cir. 2001) (retaliation for exercising FMLA rights arises under 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(c)). We need not enter this fray. All courts agree that an employee can bring a retaliation claim based on the exercise of FMLA rights. Furthermore, the WFLA provides statutory authority for considering the terms of the federal implementing regulations. RCW 49.78.410.

[3] The WFLA specifically incorporates consideration of regulatory rules applicable to the FMLA. *Id*.

11

promotions or disciplinary actions; nor can FMLA leave be counted under no fault

attendance policies." *Id.*

The parties dispute the test applicable to the type of retaliation claimed by Ms.

Espindola. According to Ms. Espindola, we should apply a *McDonnell Douglas*-style

burden shifting analysis, under which the employee must first make out a prima facie case

of discrimination; then a production burden shifts to the employer to provide a legitimate,

nondiscriminatory reason for its adverse employment action and, if this burden is met, the

employee bears the ultimate burden of demonstrating that the employer's articulated

reason for its action was a mere pretext for discrimination or retaliation. *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Apple King contends that the *McDonnell Douglas* analysis is inapplicable. According to

Apple King, we should follow the lead of the Ninth Circuit Court of Appeals and find the

*McDonnell Douglas* burden-shifting scheme inapplicable to Ms. Espindola's claim. On

this legal point, we agree with Apple King. However, as shall be discussed, the Ninth

Circuit's test actually favors Ms. Espindola.

In *Bachelder v. America West Airlines*, the Ninth Circuit held that the *McDonnell*

*Douglas* burden-shifting analysis does not apply to retaliation claims under 29 C.F.R.

§ 825.220(c). *Bachelder v. Am. W. Airlines*, 259 F.3d 1112, 1125 (9th Cir. 2001).

Because the United States Department of Labor's regulation prohibits the use of FMLA-protected leave as a "negative factor" in an employment decision, the Ninth Circuit recognized that an employee "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both. . . . No scheme shifting the burden of production back and forth is required." *Id.* at 1125.

Based on *Bachelder* and the plain language of 29 C.F.R. § 825.220(c), it is apparent that a plaintiff claiming retaliation for the exercise of FMLA/WFLA rights need only prove: (1) he or she was absent from work for reasons covered by the FMLA/WFLA, (2) he or she suffered an adverse employment decision, and (3) the covered leave was a negative factor in the employer's adverse employment decision.[4] Because establishing a regulatory retaliation claim does not require specific proof of discriminatory intent, there is no need to require the employer to proffer a

---

[4] Because *Bachelder* found 29 C.F.R. § 825.220(c) was adopted pursuant to 29 U.S.C. § 2615(a)(1) (that prohibits interference with the exercise of FMLA rights), it labeled a regulatory claim an "interference" claim. 259 F.3d at 1124-25. However, because the regulation itself employs the words "discriminating" and "retaliating," a regulatory claim is more appropriately labeled a discrimination or retaliation claim. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 n.9 (3d Cir. 2004).

nondiscriminatory basis for its employment decision or for the employee to rebut the employer's proffer.

*Application of the applicable standard to Ms. Espindola's claim*

Here, it is undisputed Ms. Espindola was fired from Apple King because of absences from work. Thus, the viability of Ms. Espindola's retaliation claim rests on the first factor of the retaliation test—i.e., whether at least some of Ms. Espindola's absences were protected by the FMLA/WFLA. Proof of this factor depends on whether Ms. Espindola can establish that she provided Apple King with adequate notice of a request for FMLA/WFLA protected leave.

*Legal requirements for adequate notice*

To invoke the right to protected leave, an employee must provide adequate notice to his or her employer. 29 U.S.C. § 2612(e); RCW 49.78.250. The notice requirement is "not onerous." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015). "An employee giving notice of the need for FMLA[/WFLA] leave does not need to expressly assert rights under the Act or even mention the FMLA[/WFLA] to meet his or her obligation to provide notice." 29 C.F.R. § 825.301(b). Verbal notice is sufficient. 29 C.F.R. § 825.302(c). There are three general components of adequate FMLA/WFLA notice: content, timing, and compliance with employer policy. The failure to meet any of

14

these three components can result in denial of FMLA/WFLA leave and protections. But

once an employee provides adequate notice, the employer must take responsive action.

With respect to content, an employee's notice must refer to a condition that

qualifies for leave under the FMLA/WFLA. Protected leave does not apply to minor

illnesses; merely calling in sick is insufficient to trigger an employee's right to protected

leave. 29 C.F.R. § 825.303(b). However, pregnancy-related incapacitation is an

explicitly covered condition. 29 C.F.R. § 825.115(b); RCW 49.78.020(16)(a)(ii)(B).

Also covered is incapacitation due to a serious medical condition that "makes

the employee unable to perform the functions" of the employee's job. 29 U.S.C.

§ 2612(a)(1)(D); 29 C.F.R. § 112(a)(4); RCW 49.78.220(1)(d).

An employee's responsibility with respect to timing of notice is somewhat

flexible. In general, an employee must provide 30 days' advance notice of planned leave.

29 U.S.C. § 2612(e); 29 C.F.R. § 825.302(a); RCW 49.78.250. However, the

FMLA/WFLA recognize that 30 days advance notice is not always possible. In such

circumstances, an employee need only provide notice as soon as practicable. 29 U.S.C.

§ 2612(e); 29 C.F.R. § 825.302(a); RCW 49.78.250. When medical or family leave is

unforeseeable, no advance notice is required. 29 C.F.R. §§ 825.303(a), .305(b);

*Lichtenstein v. Univ. of Pittsburg*, 691 F.3d 294, 301 (3d Cir. 2012); *Kauffman v. Fed.*

*Express Corp.*, 426 F.3d 880, 885-86 (7th Cir. 2005).

When it comes to certain types of conditions, an employee's obligations with respect to content and timing of notice are intertwined. Maternity leave, for example, is something generally governed by a 30-day notice requirement. RCW 49.78.250(1).[5] But during the course of a woman's pregnancy, the need for protected leave will sometimes be unpredictable. *See* 29 C.F.R. § 825.120(a)(4). For example, an expectant mother may find herself surprisingly debilitated by morning sickness. In such circumstances, the FMLA/WFLA recognize the right to take unforeseeable protected leave, even when such leave does not involve hospitalization or other direct medical supervision. 29 C.F.R. §§ 825.115(f), .120(a)(4).

An employee's notice obligations generally include compliance with an employer's internal notification procedures. 29 C.F.R. §§ 825.302(d), .303(c), .304. For example, an employer may require written notice or that notice be directed to a specific individual. If an employee fails to satisfy an employer's internal notification procedures, FMLA/WFLA leave may be delayed or denied, regardless of whether the employee might actually qualify for leave. 29 C.F.R. § 825.303(c).

---

[5] Thirty days' advance notice is not required if childbirth is unexpected. In such circumstances, the employee need only provide "such notice as is practicable." RCW 49.78.250(1).

But there is an important limitation to an employer's ability to deny FMLA/WFLA leave based on noncompliance with company policy. When an employer's policy does not comport with FMLA/WFLA standards for invoking leave (such as the standards for invoking unforeseeable leave), an employee's right to protected leave cannot be denied based simply on noncompliance with the employer's policy. *See* 29 C.F.R. § 825.304(e) ("[T]he employer may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules, absent unusual circumstances, as long as the actions are taken in a manner that does not discriminate against employees taking FMLA leave and the rules are not inconsistent with § 825.303(a) [allowing for unforeseeable leave]."); *see also* 29 C.F.R. §§ 825.302(d), .303(c), .304(a). In circumstances where the employer's policy is insufficient, an employee's notice obligations are governed solely by the terms of the FMLA/WFLA.

Once an employee has provided appropriately timed notice that he or she "may" have a condition that qualifies for FMLA/WFLA leave, the burden falls on the employer to take action. 29 C.F.R. § 825.303(b); *Lichtenstein*, 691 F.3d at 303-04. The employee's notice need not provide definitive proof of the right to take protected leave. All that needs to be raised is "probable basis" to believe the employee is entitled to FMLA/WFLA leave. *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir.

17

2004).  Once this is satisfied, the employer is obliged to either grant protected leave or investigate whether the employee's condition qualifies for leave.  29 C.F.R. §§ 825.301(a), .302(c); *Lichtenstein*, 691 F.3d at 303; *Burnett v. LFW Inc.*, 472 F.3d 471, 480 (7th Cir. 2006).

*Application of the adequate notice requirement to Ms. Espindola*

Whether Ms. Espindola provided Apple King adequate notice of the need for FMLA/WFLA leave is a question of fact.  *Lichtenstein*, 691 F.3d at 303.  Thus, Apple King is entitled to summary judgment only if, viewing the record in the light most favorable to Ms. Espindola, no reasonable fact finder could rule in her favor.

It is undisputed that Ms. Espindola notified Apple King of her pregnancy in June or July 2011.  Given that pregnancy is the type of condition that can reasonably create the need for unforeseeable protected leave, Ms. Espindola's burden of providing additional notice of incapacitation during the course of her pregnancy was at least somewhat reduced.  *See* 29 C.F.R. § 825.302(c) (notice that "employee is pregnant" may be sufficient); *Aubuchon*, 359 F.3d at 953 (note that pregnant woman was having complications would be sufficient, "despite the absence of details").  In like manner, once it was aware of Ms. Espindola's pregnancy, the expectation that Apple King would be

alert to Ms. Espindola's need for unexpected protected leave was at least somewhat enhanced.

The record on appeal suggests at least two pertinent time periods when Ms. Espindola provided adequate notice of the need for protected leave from work.[6] The first time period was late July 2011. On July 20, Ms. Espindola became ill and left work early. She subsequently produced a doctor's note dated July 21 stating she had been prescribed two days' bed rest. A reasonable inference from these facts is that Ms. Espindola's absence on July 20 was related to the need for bed rest prescribed on July 21 and 22. Given that bed rest is a common prescription for pregnancy-related complications, a fact finder could determine that Ms. Espindola's notice was sufficient to reasonably apprise Apple King of the need for protected leave.

The second relevant time period was December 2011. This was the last full month of Ms. Espindola's pregnancy. According to Ms. Espindola, she told her supervisor she suffered from episodic debilitating pain due to kidney stones that required her to stay home from work or leave early. Ms. Espindola's attendance records confirm that in December 2011, Ms. Espindola left work early on three occasions and provided same-day

---

[6] It is undisputed that there were other periods for which Ms. Espindola provided adequate notice. However, because Apple King excused those absences, they are not relevant to our inquiry.

notice of an absence on one occasion. A reasonable fact finder could infer that the absences in December were due to the episodic and unforeseeable kidney pain described by Ms. Espindola. Particularly given Apple King's knowledge that Ms. Espindola was having a difficult pregnancy,[7] a reasonable fact finder could conclude that Ms. Espindola's notice of debilitating kidney stone pain was sufficient to place Apple King on notice that Ms. Espindola was invoking the right to FMLA/WFLA protected leave. *See Byrne v. Avon Prods.*, 328 F.3d 379, 381 (7th Cir. 2003) (An employee's unusual behavior, alone, can provide notice that "something had gone medically wrong.").[8]

Although the record supports a finding that Ms. Espindola provided sufficient notice of the need for FMLA/WFLA leave in July and December of 2011, Apple King did not provide protected leave or conduct an investigation. Instead, Apple King used Ms. Espindola's absences on July 20 and December 9, 19, 20, and 30 as negative factors in its ultimate decision to terminate Ms. Espindola's employment. Apple King assessed Ms. Espindola a total of 11 adverse attendance points for the aforementioned absences, causing her to exceed the maximum number of attendance points per year by 5 points.

---

[7] Not only had Ms. Espindola been placed on bed rest during her pregnancy, she was also hospitalized as a result of kidney stones and diagnosed with gestational diabetes.

[8] Ms. Espindola also had unexcused absences in October and November. We do not assess whether those absences were governed by the same analysis as the December absences as it is unnecessary for purposes of this appeal.

Apple King claims it was justified in assessing Ms. Espindola points for the foregoing absences because Ms. Espindola's leave requests did not comport with company policy. Had Apple King's policy provided Ms. Espindola an avenue for claiming unforeseeable FMLA/WFLA leave, this defense would almost certainly prevail. 29 C.F.R. §§ 825.302(d), .303(c). But Apple King's attendance policy does not account for the FMLA/WFLA. The policy provides no explanation of how an employee would be expected to claim unforeseeable protected leave not resulting in hospitalization. Because Apple King's policy was not compliant with the FMLA/WFLA, the policy provides no defense to Ms. Espindola's retaliation claim.

Ms. Espindola has made a sufficient claim for retaliation under 29 C.F.R. § 825.220(c). As a consequence, Apple King is not entitled to summary judgment. The trial court's ruling to the contrary is reversed.

ATTORNEY FEES

Ms. Espindola requests attorney fees and costs pursuant to RAP 18.1, 29 U.S.C. § 2617(a)(3), 29 C.F.R. § 825.400(c), and RCW 49.48.030. This request is premature. Because Ms. Espindola has not yet succeeded on her claim against Apple King, we are not in a position to award attorney fees. If, after remand, Ms. Espindola prevails on her FMLA/WFLA claim, she will qualify as a prevailing party and may be awarded attorney

21

No. 35262-5-III
*Espindola v. Apple King*

fees, including fees generated during this appeal, under 29 U.S.C. § 2617(a)(3), 29 C.F.R.

§ 825.400(c), and RCW 49.48.030.

## CONCLUSION

The order on summary judgment is reversed. This matter is remanded for trial or

further proceedings consistent with the terms of this opinion.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

22